IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTINA VASELEROS-STEVENSON | * |
| Plaintiff, | * |
| v. | * Civil No. **PJM 20-1917** |
| CALVERT COUNTY, MARYLAND, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Christina Vaseleros-Stevenson has brought this action against Calvert County, Maryland ("County") and Animal Control Officer Timothy Lewis ("Officer Lewis"), following Officer Lewis's "field euthanization" of her dog, Storm. Based on that incident, Plaintiff asserts five causes of action: (1) violation of her Fourth Amendment rights, brought under 42 U.S.C. § 1983; (2) negligence; (3) conversion; (4) gross negligence; and (5) violations of Articles 24 and 26 of the Maryland Declaration of Rights. Defendants have moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, their Motions are **GRANTED WITH PREJUDICE** as to the federal civil rights claims and **DISMISSED WITHOUT PREJUDICE** as to all other claims.

### I.

The Complaint alleges that on March 16, 2018, Officer Lewis was dispatched to a residence in Lusby, Maryland, following reports of two dogs running "at large." Compl. ¶ 6. Those dogs, named Storm and Nyla, were owned by Plaintiff and her daughter. After arriving at the residence,

---

[1] Defendants also move, in the alternative, for summary judgment. Given the Court's ruling, the Motions for Summary Judgment are **MOOT**.

1

Officer Lewis "trapped" Nyla and placed her in a cage. *Id.* ¶ 13. At that time, Storm allegedly "began approaching the cage, ostensibly in an effort to rescue Nyla." *Id.* ¶ 14. Officer Lewis then attempted "several" times to capture Storm. *Id.* ¶ 15. When the dog's efforts failed, Officer Lewis elected to "field euthanize" Storm with a County-issued Ruger 10-22 rifle. *Id.* Storm was an eleven-month old "puppy," weighing 35 pounds, when he died. Plaintiff apparently concedes that Storm was not wearing a collar and tags. ECF No. 11 at 7.

The Complaint alleges that Officer Lewis's report of the incident describes Storm as "extremely aggressive." Compl. ¶ 16. The report also claims that Storm charged directly at Officer Lewis when he shot his rifle, and that Storm was euthanized "to ensure the safety of citizens in the area." *Id.* ¶ 17. According to the Complaint, Officer Lewis acted "within the scope of his authority" as an Animal Control Officer of the County. *Id.* ¶ 18.

On the other hand, Plaintiff alleges that Officer Lewis's report is "completely refuted" by an autopsy performed by Dr. Martha Smith-Blackmore. *Id.* ¶ 19. Dr. Smith-Blackmore's autopsy, Plaintiff claims, provides "radiographic evidence" demonstrating that the entry wound in Storm's skull came at a "43-degree angle to the left of [Storm]'s head." *Id.* ¶ 20. From that finding, Plaintiff concludes that Storm was not in fact charging at Officer Lewis at the time of death. Plaintiff also claims that the "aggressive behavior" described in Officer Lewis's report is inconsistent with Storm's known history and veterinary records. *Id.* ¶¶ 26–27.

Plaintiff begins with a claim against Defendants under 42 U.S.C. § 1983 for a violation of her Fourth Amendment rights. Specifically, she alleges that Officer Lewis unlawfully seized her "effects" when he euthanized Storm. The same facts inform her state law claims. Because she asserts a § 1983 claim, Plaintiff maintains that this Court has federal question jurisdiction under

28 U.S.C. § 1331, and that the Court may exercise supplemental jurisdiction over the remaining claims.

## II.

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards" that require a plaintiff to submit only a "short and plain statement of the claim showing that [she] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While the pleadings need not contain "detailed factual allegations," they must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.

The sole federal question in this case is the claim under 42 U.S.C. § 1983. Two narrow considerations, however, demonstrate that that claim is not actionable: (1) Officer Lewis is entitled to qualified immunity; and (2) Plaintiff has not alleged a pattern or practice upon which municipal liability may be predicated. Each is addressed *seriatim*.

### A.    Officer Lewis

Officer Lewis contends that he is shielded from liability under the doctrine of qualified immunity. As is well established, the doctrine protects government actors from personal liability

3

for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity gives officers latitude to exercise their authority by ensuring that only conduct that unquestionably violates the Constitution will expose them to personal liability. *See, e.g., Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986))). Because the driving force of the doctrine is a desire to resolve insubstantial claims prior to discovery, the Supreme Court has encouraged that determinations of immunity be made at the earliest possible stage. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).

When qualified immunity is invoked on a motion to dismiss, a court must view the facts in the light most favorable to the plaintiff and consider whether the complaint plausibly alleges that (1) the conduct violated a constitutional right, and (2) that the constitutional right was "clearly established" at the time. *Id.* Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. But, if the answer at either step is no, qualified immunity attaches and no further analysis is necessary.

The parties agree that the unreasonable use of lethal force against privately owned dogs amounts to an unlawful seizure under the Fourth Amendment. *Altman v. City of High Point, N.C.*, 330 F.3d 194, 203 (4th Cir. 2003). What the parties do dispute is whether that right was violated at all and whether it was clearly established. Because the former question depends on a "kaleidoscope of facts" not properly considered at this stage, the Court proceeds to the latter part

4

of the analysis: whether the right was clearly established.[2] *Pearson*, 555 U.S. at 239; *see also Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) ("we may determine whether the constitutional rights allegedly violated here were clearly established without first determining whether those rights exist at all").

In short, the precedent that binds this Court does not clearly establish that Officer Lewis's conduct—as alleged—was unconstitutional. An officer's conduct violates clearly established law "when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Of course, that "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citation omitted). Ultimately, the officer must be on notice that his conduct is unconstitutional.

The parties rely on the Fourth Circuit's foundational opinion in *Altman*, a case that is not only instructive, but dispositive. In *Altman*, the Fourth Circuit confronted facts that closely track those here; animal control officers shot and killed dogs that ran at large in the City of High Point, North Carolina ("City"). *See* 330 F.3d at 196–99. Out of concern for public safety, the officers used lethal force where the dogs were assumed to be a danger to the community. Following the death of their dogs, owners brought suit pursuant to 42 U.S.C. § 1983 alleging that the officers violated their Fourth Amendment rights. As here, the officers raised a qualified immunity defense and the Fourth Circuit considered whether their conduct was constitutional.

---

[2] Plaintiff frequently misconstrues the "clearly established" prong of the analysis. She concludes that because *Altman* extends Fourth Amendment protections to dog owners, there is a clearly established constitutional right. It is not enough that the right simply exists. Rather, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Altman*, 330 F.3d at 210 (citation omitted).

5

Much like Officer Lewis, the animal control officers in *Altman* were tasked with enforcing ordinances that made it unlawful for an owner to allow its dog to "run at large"—defined as a "dog that is not in an enclosure or otherwise confined, or is not under the control of the owner or other person by means of a leash, cord or chain." *Id.* at 196–97. To protect against the potential threat posed by at-large dogs, the City made it lawful for "animal control specialist[s] . . . to tranquilize *or kill* any dog at large within the city which cannot safely be taken up and impounded." *Id.* at 197. Relying, in part, on these provisions, the *Altman* officers argued that their conduct did not violate the Fourth Amendment. The Fourth Circuit agreed.

The only differences between *Altman* and the case at bar are at most of minor degree. Even if the dogs in *Altman* were more aggressive, Officer Lewis's conduct was still not clearly unlawful. In *Altman*, as here, an animal control officer responded to a report of a dog behaving "aggressively" while wandering the streets alone. *Id.* at 199. When the officer arrived at the scene, the dog "took off" toward residences "located further down the street," at which point the officer fired at the dog with a shotgun from 75 yards away. *Id.* The officer drew closer and fired again, missing both times. After striking the dog on a third attempt, the officer returned to his truck to retrieve additional shotgun shells, killing the dog with a fourth shot. The dog at issue apparently "wore his collar and tags" and was known to be obedient. *Id.* The Fourth Circuit deemed the officer's conduct constitutional after considering the "substantial [state] interest in protecting [the public] from all the dangers and nuisances associated with dogs." *Id.* at 205.

In this case, Officer Lewis faced a very similar situation. He received a report of dogs running at large. He was confronted with an "aggressive" at-large dog with no owner in sight. Compl. ¶ 16. After several unsuccessful attempts to capture the dog, Officer Lewis decided to euthanize Storm to "ensure the safety of the citizens in the area." *Id.* ¶ 17. Just as in *Altman*, Officer

6

Lewis's actions were supported by local law, under which "[a] dog running at large in Calvert County without the proper license tag attached is a nuisance and is subject to seizure, detention, and *euthanasia*." Md. Code Ann., Local Gov't § 13-115(f)(1)(i) (emphasis added). If, like Officer Lewis, an "animal control officer is not able to catch a dog running at large in the county without a proper license tag, the animal control officer or deputy animal control officer may shoot or otherwise kill the dog." *Id.* § 13-115(f)(1)(iii). Accordingly, it was not unreasonable for Officer Lewis to believe his conduct was lawful.

This conclusion is confirmed by the significant government interest recognized by the Fourth Circuit in protecting communities from at-large dogs:

> Put simply, while we do not denigrate the possessory interest a dog owner has in his pet, we do conclude that dog owners forfeit many of these possessory interests when they allow their dogs to run at large, unleashed, uncontrolled, and unsupervised, for at that point the dog ceases to become simply a personal effect and takes on the nature of a public nuisance. This understanding is reflected in High Point Ordinance § 12–2–16, which provides that when a dog is running at large it may be tranquilized *or even killed* if it cannot be safely taken up and impounded.

*Altman*, 330 F.3d at 205–06 (emphasis added).

Whether or not Plaintiff had a Fourth Amendment interest in Storm, federal law extends qualified immunity to Officer Lewis because his conduct did not clearly violate the Constitution. He is clearly entitled to qualified immunity. Plaintiff's § 1983 claim asserted against him is therefore **DISMISSED WITH PREJUDICE.**

### B. The County

Plaintiff effectively concedes that she has failed to plead a pattern or practice by the County that would support a finding of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Nevertheless, she asks this Court to "defer its decision" as to the County's Motion to Dismiss the *Monell* claim. ECF No. 11 at 34; *see also* ECF No. 12 at ¶ 10 ("I do not have sufficient facts at this time to make a good faith claim that [Officer Lewis] was executing an

official policy or custom of Calvert County, Maryland."). There is no basis for the Court to accede to that request. Accordingly, Plaintiff's § 1983 claim against the County is also **DISMISSED WITH PREJUDICE**.

### C. Supplemental Jurisdiction

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."). Those claims will be **DISMISSED WITHOUT PREJUDICE**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS WITH PREJUDICE** Defendants' Motions to Dismiss Plaintiff's federal civil rights claims and **DISMISSES WITHOUT PREJUDICE** all other of Plaintiff's claims.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

February 17, 2021